## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

myCUmortgage, LLC,           : Case No. 3:18-cv-00091
                             :
          Plaintiff,         : District Judge Walter H. Rice
                             : Magistrate Judge Sharon L. Ovington
vs.                          :
                             :
CENLAR FSB,                  :
                             :
          Defendant.         :
                             :

## REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

Plaintiff myCUmortgage, LLC ("myCU") is an Ohio corporation transacting

business in the Ohio mortgage industry.  (Doc. #2, *PageID* #104).  Defendant Cenlar FSB

("Cenlar"), a "wholesale bank specializing in mortgage sub-servicing nationwide,"

agreed to sub-service residential mortgage loans for myCU through a mortgage

subservicing agreement ("Agreement").  (Doc. #9, *PageID* #330).  The Agreement was

eventually terminated by myCU, who brought this suit against Cenlar for breach of

contract and conversion.  (Doc. 16, *PageID* #406).  myCU seeks dismissal of Cenlar's

counterclaims for breach of contract, breach of implied covenant of good faith and fair

dealing, and indemnification.  (Doc. 16, *PageID* #407).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

This case is before the Court upon Plaintiff's Partial Motion to Dismiss and for Judgment on the Pleadings (Doc. #13), Defendant's Memorandum in Opposition (Doc. #16), Plaintiff's Reply in Support (Doc. #20), and the record as a whole.

## II.     BACKGROUND

Central to the dispute between Plaintiff myCU and Defendant Cenlar is the Agreement entered into by Cenlar on June 1, 2008 with Wright-Patt Financial Group, LTD, ("WPFG").  (Doc. #9, *PageID* #330).  Plaintiff myCU is the successor in interest to WPFG and thus, a counterparty to the Agreement.  (Doc. #9, *PageID* #331).  The parties concur that the Agreement, under which Cenlar agreed to sub-service residential mortgage loans for Plaintiff myCU, must be construed in accordance with the laws of the State of New Jersey.  (Doc. 9, *PageID* #330-31).

The initial term of the Agreement was set to expire on May 31, 2013, but Cenlar and myCU extended the term of the Agreement twice.  (Doc. 16, *PageID* #406).  The First Amendment to the Subservicing Agreement ("First Amended Agreement") extended the term until May 31, 2016 and the Second Amendment to the Subservicing Agreement ("Second Amended Agreement") granted a further extension until May 31, 2017.  (Doc. #9, *PageID* #332).

Of considerable importance is the fact that both amendments to the Agreement provided for the payment of Exit Fees to Cenlar.  (Doc. 16, *PageID* #406).  The Agreement connects the amount of an "Exit Fee" with Exhibit II of the Agreement. Exhibit II, in turn, sets the amounts of "Fees for Standard Services."  (Doc. 2, *PageID* #122, § 1.9; *see PageID* #s 148-49).  Cenlar asserts, "Pursuant to Sections 5.2 and 5.5 of

2

the Agreement, among others, Cenlar was entitled to pay the payment of Exit Fees from myCU." (Doc. #9, *PageID* #352).

Before the parties executed the Second Amended Agreement, myCU pointed out that, in its view, the Exit Fees provided in the Agreement constituted unenforceable penalties. (Doc. 9, *PageID* #354, ¶131). Nevertheless, myCU executed the Second Amended Agreement so that it had adequate time to build its own servicing platform. (Doc. 9, *PageID* #354; Doc. 2, *PageID* #106).

The parties' relationship began to languish in January 2017 when myCU notified Cenlar of its intent to allow the Agreement to expire on or around May 31, 2017. (Doc. 9, *PageID* #337). myCU ultimately provided notice (on May 31, 2017) to Cenlar of termination of the Agreement without cause. (Doc. 16, *PageID* #406). Cenlar subsequently cooperated in transferring mortgage servicing to myCU. Additionally, Cenlar maintained that it was entitled to Exit Fees under the terms of Section 5.2 of the Agreement. *Id.* myCU refused to pay the Exit Fees upon demand by Cenlar. (Doc. 9, *PageID* #352).

Due to this refusal, Cenlar deducted Exit Fees from the funds (apparently borrower escrow funds) it transferred to myCU. (Doc. 16, *PageID* #408). myCU alleges, and Cenlar denies, that Cenlar eventually retained $945,693.70. (Doc. #9, *PageID* #347, ¶89). Cenlar contends that it was entitled to withhold Exit Fees under Section 4.3—"Default and Right of Offset"—of the Agreement.

Plaintiff commenced this action in the Court of Common Pleas, Greene County, seeking declaratory judgment and alleging breach of contract and conversion. (Doc. 16,

3

*PageID* #407; Doc. 2, *PageID* #114).  Defendant removed the action to this Court and filed its Answer and Counterclaims, seeking declaratory judgment and alleging breach of contract, breach of implied covenant of good faith and fair dealing, and indemnification. (Doc. 16, *PageID* #407).  myCU moved to dismiss Cenlar's Counterclaims.  (Doc. 16, *PageID* #407).

## III.   STANDARD OF REVIEW

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is evaluated under the same standards that apply to a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  Two cases, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), guide the analysis for resolving a motion for judgment on the pleadings.  *See HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012); *see also Fritz v. Charter Twp. of Comstock*, 592 F.3d at 722.

Under *Twombly* and *Iqbal*, "all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *Fritz*, 592 F.3d at 722.  *See also Iqbal*, 556 U.S. at 678; *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008).  A party is clearly entitled to judgment under Rule 12(c) "if there is an absence of law to support a claim of the type made or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff [here, Counterclaimant Cenlar] does not have a claim."  *Mayrides v.*

*Delaware County Comm'rs*, 666 F.Supp.2d 861, 866 (S.D. Ohio 2009) (Marbley, D.J.) (citation omitted).

To survive a motion to dismiss or a motion for judgment on the pleadings, the moving party's factual allegations must provide sufficient notice to the opposing party as to the claims alleged, and the moving party "must plead 'sufficient factual matter' to render the legal claim plausible, i.e., more than merely possible." *Fritz*, 592 F.3d at 722 (quoting, in part, *Iqbal*, 556 U.S. at 662). Facial plausibility is present if the moving party "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "'[A] legal conclusion couched as a factual allegation' need not be accepted as true..., nor are recitations of the elements of a cause of action sufficient." *Fritz*, 592 F.3d at 722 (citations omitted).

## IV. DISCUSSION

### A. Choice of Law

A federal court whose jurisdiction is based on diversity must apply the choice-of-law rules of the state in which it sits. *Miami Valley Mobile Health Servs. v. ExamOne Worldwide*, 852 F. Supp. 2d 925, 931 (S.D. Ohio 2012) (Rice, D.J.) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Thus, Ohio's choice-of-law rules apply in this case. *See Klaxon*, 313 U.S. 496. Contractual choice-of-law provisions are valid and enforceable under Ohio law. *Id.* at 932 (citing *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438-39, 6

Ohio B. 480, 453 N.E.2d 683, 686 (Ohio 1983)). For claims outside the scope of a contractual choice-of-law provision, Ohio's conflict-of-law rules apply. *Id.* at 936.

In applying conflict-of-law rules, the initial step is to classify the underlying claims in accordance with Ohio's rules. *In re Commercial Money Center, Inc., Equipment Lease Litigation*, 603 F. Supp. 2d 1095, 1103 (N.D. Ohio 2009) (citing Restatement of the Law, 2D, Conflict of Laws § 7, Comment b). Contract and tort claims are treated differently under Ohio conflict-of-law rules. *Hagberg v. Delphi Auto. Sys.*, 268 F. Supp. 2d 855 (N.D. Ohio 2002) (citing *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St. 3d 474, 747 N.E.2d 206 (2001) (citations omitted)). When parties to a contract have chosen a state to govern their contractual rights and duties, section 187 of the Restatement (Second) of Conflicts applies. *Id.* at 861 (citing Restatement of the Law, 2D, Conflict of Laws § 187). However, in accordance with Ohio law, "[t]he general rule for tort claims is a presumption toward applying the law of the state in which the injury occurred." *Safety Today, Inc. v. Roy*, Case No. 2:12-cv-510, 2012 WL 2374984, at *6 (S.D. Ohio, June 22, 2012) (citing *In re Commercial Money Center, Inc.*, 603 F. Supp. 2d at 1105; *see also Miami Valley Mobile Health Servs.*, 852 F. Supp. 2d at 937.

Here, the parties do not dispute that at the very least, the breach of contract and indemnification claims are governed by New Jersey law in accordance with Section 9.7 of the Agreement. (Doc. 13, *PageID* #374; Doc. 16, *PageID* #408). There is disagreement, however, as to whether New Jersey or Ohio law applies to the claim of breach of implied covenant of good faith and fair dealing. (Doc. 13, *PageID* #375; Doc. 16, *PageID* #408). Under Ohio law, a claim for breach of implied covenant of good faith

and fair dealing is a tort claim even where the claim relates to "obligations arising from a contract." *Valente v. Univ. of Dayton*, 689 F. Supp. 2d 910, 923-24 (S.D. Ohio 2010) (Merz, M.J.) (quoting *In re Commercial Money Center, Inc.*, 603 F. Supp. 2d at 1107). Thus, because Cenlar's claim for breach of implied covenant of good faith and fair dealing sounds in tort, the claim will be governed by the law of the place of injury.

In this case, the place of injury is Ohio and the conduct causing the injury occurred in Ohio. Pursuant to the Agreement with Plaintiff my CU, an Ohio corporation, Cenlar conducted business in Ohio by providing residential mortgage loan servicing to Ohio consumers. (Doc. 9, *PageID* #330). Cenlar alleges that Plaintiff myCU entered into the Second Amended Agreement without intending to pay Exit Fees and with the purpose of denying Cenlar the benefit of the bargain under the Agreement. (Doc. 9, *PageID* #355). Cenlar contends that, as a result, when Plaintiff myCU refused to pay Exit Fees, Plaintiff myCU breached the implied covenant of good faith and fair dealing causing harm to Cenlar. (Doc. 9, *PageID* #355). Therefore, the place of injury and the law governing the counterclaim for breach of implied covenant of good faith and fair dealing is Ohio.

**B.**   **Breach of Implied Covenant of Good Faith and Fair Dealing**

**1.**   **Ohio Law**

Plaintiff myCU seeks to dismiss Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing. Under Ohio law, there is an implied duty of good faith and fair dealing in every contract. *Thomas & Marker Constr., Co. v. Wal-Mart Stores, Inc.*, 2008 WL 4279860, at *23 (S.D. Ohio, Sept. 15, 2008) (Rose, D.J.) (citing *Littlejohn v. Parrish*, 163 Ohio App. 3d, 2005 Ohio 4850, 839 N.E.2d 49, 54

(Ohio Ct. App. 2005). However, there is not a separate cause of action for breach of such an implied duty when there is a contract governing the relationship between the parties. *Id.* (citing *Littlejohn*, 839 N.E.2d at 54; *Lakota Local School District Board of Education v. Brickner*, 108 Ohio App. 3d 637, 671 N.E.2d 578, 584 (Ohio Ct. App. 1996)). Here, Plaintiff myCU and Cenlar were acting pursuant to the Agreement and the Second Amended Agreement. (Doc. #9, *PageID* #332; Doc. 9, *PageID* #350-51). As a result, since Plaintiff myCU and Cenlar were acting pursuant to a contract, Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing fails as an independent cause of action under Ohio law. Thus, the counterclaim for breach of implied covenant of good faith and fair dealing fails as a matter of law.

In the event that New Jersey, rather than Ohio law applies, the following analysis evaluates the viability of Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing under New Jersey law.

###    2.    New Jersey Law

Plaintiff myCU contends that, even if New Jersey law was found to govern Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing, the counterclaim should still be dismissed. Under New Jersey law, a claim for breach of implied covenant of good faith and fair dealing "is not a tort claim, but rather contractual in nature." *Fregara v. Jet Aviation Business Jets*, 764 F. Supp. 940 (D.N.J. 1991) (citing *Noye v. Hoffman La Roche, Inc.*, 238 N.J. Super. 430, 437 (N.J. App. Div. 1990)). The purpose of the implied covenant "is to ensure that contracting parties refrain from doing

anything which will have the effect of destroying or injuring the right of the other party to receive the benefits of the contract." *T.J. McDermott Transp. Co. v. Cummins, Inc.*, No. 14-04209, 2015 WL 1119475, at *13 (D.N.J., Mar. 11, 2015) (citation omitted).

Plaintiff myCU contends that, even if Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing is governed by New Jersey law, it should be dismissed for four reasons.

### a. Cenlar's Allegations Fit Within the Allowable Circumstances under New Jersey Law

The implied covenant of good faith and fair dealing exists in every contract under New Jersey law, but "is to be interpreted narrowly, lest it 'become an all-embracing statement of the parties' obligations under contract law, imposing unintended obligations upon parties and destroying the mutual benefits created by legally binding agreements." *Cargill Global Trading v. Applied Dev. Co.*, 706 F. Supp. 2d 563 (D.N.J. 2010) (quoting *Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 224, 864 A.2d 387 (2005)). Thus, there are three specific instances where there is an independent cause of action for such a claim:

> (1) to allow the inclusion of additional terms and conditions not expressly set forth in the contract, but consistent with the parties' contractual expectations; (2) to allow redress for a contracting party's bad faith performance of an agreement, when it is pretext for the exercise of a contractual right to terminate, even where the defendant has not breached any express term; and (3) to rectify a party's unfair exercise of discretion regarding its contract performance.

*Barrows v. Chase Manhattan Mortg. Corp.*, 465 F. Supp. 2d 347, 365 (D.N.J. 2006)

(citing *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 791 A.2d 1068, 1077 (N.J.

Super. Ct. App. Div. 2002)).

Plaintiff myCU first contends that Cenlar's counterclaim for the breach of implied

covenant of good faith and fair dealing does not fit within the limited instances allowable

under New Jersey law. This contention lacks merit. Cenlar's contentions fit squarely

within the third allowable circumstance regarding rectifying a party's unfair exercise of

discretion of contract performance because Cenlar claims that Plaintiff myCU refused to

pay the Exit Fees despite their agreement to do so under the Agreement and Second

Amended Agreement. *See Alin v. Am. Honda Motor Co.*, No. 08-4825, 2010 WL

1372308, at *12 (D.N.J. Mar. 31, 2010) (finding that plaintiff's allegations that defendant

exercised discretion in not performing under a warranty fell within the limited

circumstances of a claim for implied covenant of good faith and fair dealing under New

Jersey law); (Doc. 9, *PageID* #355). Therefore, Cenlar properly pleads an independent

cause of action for the breach of implied covenant of good faith and fair dealing within

the circumstances permissible under New Jersey law.

### b. Cenlar Pleads the Elements of the Counterclaim

To succeed on a claim for the breach of implied covenant of good faith and fair

dealing, the moving party must prove that: "(1) a contract existed between the [parties];

(2) the [moving party] performed under the terms of the contract [unless excused]; (3) the

[non-moving party] engaged in conduct, apart from its contractual obligations, without

good faith and for the purpose of depriving the [moving party] of the rights and benefits

under the contract; and (4) the [non-moving party]'s conduct caused the [moving party] to suffer injury, damage, loss or harm." *Jatras v. Bank of America Corp.*, No. 09-3107, 2010 WL 5418912, at *7 (D.N.J., Dec. 23, 2010) (citing *Wade v. Kessler Inst.*, 343 N.J. Super. 338, 778 A.2d 580, 586 (N.J. Super. Ct. App. Div. 2001)).  Although the moving party must demonstrate bad motive or intention, only an allegation of bad faith is required at the pleading stage. *T.J. McDermott Transp. Co.*, 2015 WL 1119475, at *13 (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 773 A.2d 1121, 1126 (N.J. 2001); *Seidenberg*, 791 A.2d at 1080).

Cenlar properly pleads a counterclaim for breach of implied covenant of good faith and fair dealing under New Jersey law.  As an initial matter, the Agreement between Plaintiff myCU and Cenlar constitutes a valid contact.  (Doc. #9, *PageID* #332; Doc. 9, *PageID* #350-51). Cenlar pleads that it performed under the terms of the Agreement. (Doc. 9, *PageID* #353).

Additionally, Cenlar alleges that Plaintiff myCU acted with the purpose of denying Cenlar the benefit of the bargain.  (Doc. 9, *PageID* #354).  Prior to entering into the Second Amended Agreement, Cenlar contends that Plaintiff myCU expressed a belief that the Exit Fees under the Agreement were unenforceable penalties.  (Doc. 9, *PageID* #354).  Cenlar further pleads that Plaintiff myCU entered into the Second Amended Agreement "knowing that it never intended to pay the Exit Fees as required by the Agreement and subsequent amendments" and that this was for the purpose of depriving Cenlar of the benefit of the bargain.  (Doc. 9, *PageID* #354).  Plaintiff myCU's refusal to pay the Exit Fee obligation, Cenlar contends, resulted in a breach of the implied covenant

of good faith and fair dealing.  (Doc. 9, *PageID* #355).  Therefore, Cenlar properly pleads and alleges that Plaintiff myCU acted with bad faith and with the purpose of depriving Cenlar of the rights and benefits under the Agreement.

Fourth and finally, Cenlar properly pleads that Plaintiff myCU's conduct caused Cenlar harm.  Cenlar specifically states that it incurred additional costs as a result of its reliance on Plaintiff myCU's commitment to pay Exit Fees by entering into the Second Amended Agreement.  (Doc. 9, *PageID* #355).  Additionally, Cenlar alleges that Plaintiff myCU's ultimate refusal to pay the Exit Fees constitutes a breach of the implied covenant of good faith and fair dealing that caused Cenlar additional harm.  (Doc. 9, *PageID* #355).  Hence, Cenlar properly pleads the fourth and final element of a counterclaim for breach of implied covenant of good faith and fair dealing under New Jersey law.

### c. Cenlar Properly Pleads Plaintiff myCU's Conduct During Performance

There can be no claim for breach of implied covenant of good faith and fair dealing prior to the creation of a contract.  *Galicki v. New Jersey*, No. 14-169, 2016 WL 4950995, at *30 (D.N.J., Sept. 15, 2016).  Rather, the covenant "focuses on the performance and enforcement of a valid agreement more than it regulates contract formation."  *Jubelt v. United Mortg. Bankers, Ltd.*, No. 13-7150, 2015 WL 3970227 (D.N.J., June 30, 2015) (quoting *In re Estate of Fischer*, No. 107359, 2011 WL 2314353, at *4 (N.J. Super. Ct. App. Div., June 14, 2011)).

Plaintiff myCU contends that Cenlar's focus on alleged intentions and statements of Plaintiff myCU before entering into the Second Amended Agreement, rather than on

problems with myCU's performance, constitutes an improper basis for a counterclaim of breach of implied covenant of good faith and fair dealing. (Doc. 13, *PageID* #381). This contention is not well-taken. Although Cenlar does allege that myCU expressed a belief prior to entering into the Second Amended Agreement with Cenlar that the Exit Fees were unenforceable penalties, Cenlar alleges that the breach of the covenant occurred during performance after the parties executed the Second Amended Agreement. (Doc. 9, *PageID* #354-55). Specifically, Cenlar contends that it relied on Plaintiff myCU's commitment to pay Exit Fees when Plaintiff myCU entered into the Second Amended Agreement and thus, Plaintiff myCU "acted in bad faith during the period in which it induced Cenlar to perform all of its servicing transfer obligations." (Doc. 9, *PageID* #355; Doc. 16, *PageID* #412). Therefore, Cenlar properly alleges that Plaintiff myCU breached the implied covenant of good faith and fair dealing during performance of the Agreement.

### d. Cenlar's Counterclaim is Duplicative

Under New Jersey law, the moving party "may not maintain a separate action for breach of implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim." *T.J. McDermott Transp. Co.*, 2015 WL 1119475, at *13 (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J., Nov. 16, 2009)). A party "cannot merely recite the same conduct it alleges for Plaintiff's breach of contract and transform such conduct into a breach of the implied duty of good faith and fair dealing by appending a conclusory label that those actions breaching the contract were also done in bad faith." *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016

13

WL 740267, at *5 (D.N.J. Feb. 24, 2016). Where a claim for breach of implied covenant of good faith and fair dealing is duplicative or redundant of a claim for breach of contract, then it must be dismissed. See *id.*

Plaintiff myCU contends that Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing should be dismissed because it matches Cenlar's allegation for breach of contract. This contention is well-taken. Cenlar alleges for its breach of contract counterclaim that Plaintiff myCU anticipatorily repudiated the Agreement by refusing to pay Exit Fees and that the repudiation "constituted a material breach of the Agreement." (Doc. 9, *PageID* # 354). Similarly, Cenlar alleges that Plaintiff myCU's "later repudiation of its obligation to pay Exit Fees to Cenlar breached the implied covenant of good faith and fair dealing contained within the Agreement." (Doc. 9, *PageID* #355). Cenlar's counterclaims for breach of contract and breach of implied covenant of good faith and fair dealing are both predicated on the same conduct, which is Plaintiff myCU's repudiation of its Exit Fee obligation. Thus, Cenlar's counterclaims for the breach of contract and breach of implied covenant of good faith and fair dealing are redundant.

Cenlar argues that its counterclaim for breach of implied covenant of good faith and fair dealing is not duplicative because the claim is premised on Plaintiff myCU's "knowledge and intent from the period when it negotiated the Second Amended Agreement until the point in time that it repudiated its obligation to pay fees." (Doc. 16, *PageID* #413). Although, Cenlar does plead that Plaintiff myCU expressed reservations about the enforceability of the penalties, but entered into the Second Amended

Agreement anyway, the counterclaims for breach of implied covenant of good faith and fair dealing and breach of contract are nevertheless ultimately premised on Plaintiff myCU's refusal to pay Exit Fees. (Doc. 9, *PageID* #354-55). Merely alleging that Plaintiff myCU's repudiation of the Exit Fee obligation was done in bad faith is insufficient for Cenlar to maintain the counterclaim for the breach of implied covenant of good faith and fair dealing as a separate action. See *Intervet, Inc.*, 2016 WL 740267, at *5. Therefore, Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing is duplicative of the breach of contract counterclaim under New Jersey law.

As a result, even if Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing were governed by New Jersey law, the counterclaim would fail as a matter of law.

### C.      Breach of Contract

The parties agree that Cenlar's counterclaim for breach of contract is governed by New Jersey law. Plaintiff myCU contends that Cenlar's counterclaim for breach of contract should be dismissed for failing to plausibly plead it suffered actual damages.

To satisfy the pleading requirement for a breach of contract claim under New Jersey law, the moving party must allege "(1) a contract, (2) a breach of that contract, (3) damages flowing therefrom; and (4) that the party performed its own contractual duties." *Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002) (citations omitted).

Setting damages aside for the moment, the parties do not dispute that the

Agreement, including the Second Amended Agreement, constitutes a valid contract.

(Doc. #9, *PageID* #332; Doc. 9, *PageID* #350-51). Cenlar alleges that Plaintiff breached

the Agreement "by refusing to pay the Exit Fees as required by the Agreement." (Doc. 9,

*PageID* #354). Cenlar contends that "Sections 5.2 of the Agreement unequivocally set

forth Cenlar's right to receive Exit Fees regardless of whether the Agreement is

terminated with or without cause." (Doc. 9, *PageID* #354). Additionally, Cenlar claims

that it performed its contractual obligations under the Agreement. (Doc. 9, *PageID*

#353). These allegations suffice to satisfy three elements of a breach of contract

counterclaim under New Jersey law, leaving the parties' dispute over the adequacy of

Cenlar's actual-damages pleading.

New Jersey law is somewhat forgiving when faced with the existence of actual

damages purportedly stemming from a breach of contract. A claim for breach of contract

may proceed under New Jersey law where a party lacks proof of actual damages. *See

Zacks v. NetJets Inc.*, No. 11-2537, 2011 WL 4387147, at *3 (D.N.J. Sept. 20, 2011)

("Although it appears that Plaintiff has not suffered any actual damages as a result of the

salary reduction, this is not fatal to his claim"). For "breach of contract, or an invasion of

a legal right, the law ordinarily infers that damages ensued, and, in the absence of actual

damages, the law vindicates the right by awarding nominal damages." *Nappe v.

Anschelewitz, Barr, Ansesll & Bonello*, 97 N.J. 37, 45-46 (N.J. 1984) (citing *Spiegel v.

Evergreen Cemetery Co.*, 117 N.J.L. 90, 93 (Sup. Ct. 1936)). Therefore, a mere "lack of

damages is not a complete defense to a breach of contract claim." *Gray v. CIT Bank, N.A.*, No. 18-1520, 2018 WL 6804273, at *6 (D.N.J. 2018) (citing *Nappe*, 97 N.J. at 46).

Cenlar pleads that, as a result of Plaintiff myCU's alleged breach, it was unable to receive the benefits of the Agreement and suffered damages. (Doc. 9, *PageID* #354). Plaintiff myCU contends, however, that Cenlar "admits it suffered no damage from [the] alleged breach because it netted out the Exit Fees it claimed were owed under the Agreement from the amounts transferred to myCU." (Doc. 13, *PageID* #377). Although Cenlar acknowledges that it retained Exit Fees, Cenlar does not admit that it suffered no damage. (Doc. 9, *PageID* #341; Doc. 9, *PageID* #354). Rather, Cenlar contends that, at minimum, it suffered some actual harm due to Plaintiff myCU's alleged anticipatory repudiation of the Agreement. (Doc. 9, *PageID* #354; Doc. 16, *PageID* #409). Particularly, Cenlar states that "it incurred costs and expenses, including attorney's fees, associated with myCU's extensive efforts to avoid payment owed under the Agreement." (Doc. 9, *PageID* #409). Thus, Cenlar has sufficently alleged damages and ultimately, a counterclaim for breach of contract under New Jersey law. See *Video Pipeline, Inc.*, 210 F. Supp. 2d at 561.

## D. Indemnification

Cenlar alleges that it is entitled to indemnification for its losses, including but not limited to, attorney fees, as a result of Plaintiff myCU's affirmative claims and Cenlar's resulting counterclaims. Cenlar specifically claims that, pursuant to Section 8.3 of the Agreement, Plaintiff myCU "is required to indemnify and hold Cenlar harmless" from

losses suffered or incurred by Cenlar arising from litigation to which Cenlar is made party as a result of its obligations under the Agreement. (Doc. 9, *PageID* #355). Plaintiff myCU disagrees and seeks to dismiss Cenlar's counterclaim for indemnification.

"Indemnification is available under New Jersey law in two situations: when a contract explicitly provides for indemnification or when a special legal relationship between the parties creates an implied right to indemnification." *Allied Corp. v. Frola*, 730 F. Supp. 626, 639 (D.N.J. 1990). A common purpose of an indemnification provision is "to allocate risk of loss stemming from the parties' performance under the contract." *Hill v. Commerce Bank Corp.*, No. 09-3985, 2011 WL 2293324, at *5 (D.N.J. June 8, 2011).

An indemnification provision should be interpreted according to its plain language. This includes "read[ing] the document as a whole in a fair and common sense manner." *Travelers Indemn. Co. v. Dammann & Co.*, 594 F.3d 238, 255 (3d Cir. 2010) (quoting *Hardy ex rel. Dowdell v. Abdul-Matin*, 198 N.J. 95, 965 A.2d 1165, 1169 (N.J. 2009)). First-party claims—meaning direct claims between parties to a contract—have been rejected under an indemnification provision in accordance with New Jersey law. See *Atlantic City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 453 F.App'x 174 180-81 (3d Cir. 2011) (decisions from the Third Circuit and New Jersey Appellate Division have "foreclosed" that indemnification clauses do not apply to first-party disputes); *Investors Savings Bank v. Waldo Jersey City, LLC*, 418 N.J. Super. 149, 12 A.3d 264, 271 (N.J. Super. Ct. App. Div. 2011) ("It is only when the indemnitee is found liable to a third party that the indemnification agreement may be triggered."); *but see*

*First Jersey Nat'l Bank v. Dome Petroleum Ltd.*, 723 F.2d 335 (3d Cir. 1983) (holding

that the indemnification clause at issue included losses resulting from first-party breach

of contract). The rejections, however, have been based "on the language of the particular

indemnity provisions—not on any statutory or jurisprudential bar." *GMFS, LLC v.

Cenlar FSB*, No. 18-00582, 2019 WL 165711, at *5 (M.D. La. Jan. 9, 2019) (citing

*Travelers Indemn. Co.*, 594 F.3d at 255).[2]

In reading the plain language of the indemnification clause at issue in this case, it

does not specifically carve out first-party claims, nor does it explicitly exclude them.

(Doc. 1, *PageID* #43-44). Section 8.3 of the Agreement provides:

> Except as otherwise stated herein, Owner/Servicer [Plaintiff myCU] shall
> indemnify and hold Subservicer [Cenlar] harmless against any loss, liability,
> forfeiture or expense, including without limitation carrying costs, investigation
> costs, fines, penalties and attorneys' fees and expenses, including, without
> limitation, the costs and expense of curing any breaches of Owner/Servicer's
> representations and warranties relating to the Mortgage Loans (collectively, the
> "Liabilities"), suffered or incurred by Subservicer arising out of, directly or
> indirectly resulting from or relating to:
>
> > a. Owner/Servicer's willful misfeasance, bad faith, fraud, gross negligence,
> > or reckless disregard of its obligations hereunder;
> >
> > b. any material misrepresentation made by Owner/Servicer in this
> > Agreement;
> >
> > c. any material breach by Owner/Servicer of a representation, warranty or
> > covenant of Owner/Servicer contained in this Agreement;

---

[2] Although the Third Circuit Court of Appeals determined in *Travelers Indemn. Co.* that the indemnification
provision in the contract at issue did not contemplate first-party claims, the Court of Appeals explained, "we cannot
hold that first-party indemnification claims…are categorically barred as a matter of law in New Jersey absent direct
authority to that effect." *Travelers Indemn. Co.*, 723 F.2d at 255.

d. errors and omissions in the processing, origination or servicing of any Mortgage Loan prior to the applicable Transfer Date;

e. compliance by Subservicer with instructions or requirements of Owner/Servicer in connection with this Agreement; and

f. any claim, litigation or proceeding to which Subservicer is made a party as a result of its acting as, or status as, Subservicer of a Mortgage Loan, other than any such claim, litigation or proceeding (i) which is based on a misrepresentation, breach or error or omission on the part of Subservicer and (ii) with respect to which Subservicer must indemnify Owner/Servicer pursuant to this Agreement.

(Doc. 1-2, *PageID* #43-44).

The court in *GMFS* interpreted the exact indemnification language that is included in the indemnification provision at issue in this case. *GMFS*, 2019 WL 165711, at *5; (Doc. 1-2, *PageID* #43-44). In fact, the dispute included one of the same parties named here: Defendant Cenlar. *Id.* The court in *GMFS* stated that it could not "interpret Section 8.3 to apply only to third-party indemnity claims without reading Section 8.3(c) out of the agreement" because "Section 8.3(c) …oblige[d] *GMFS* to indemnify Cenlar against any loss 'directly or indirectly resulting from or relating to …any material breach by [GMFS] of a representation, warranty[,] or covenant of [GMFS] contained in this Agreement." *Id.* (alterations in original). The court noted that GMFS failed to explain "how Cenlar could have liability to a third-party 'directly … resulting from' GMFS's material breach of a 'representation warranty[,] or covenant' in the agreement." *Id.* In comparing the language to the indemnity provision in *Traveler Indemn. Co.*, 594 F.3d at 255 and noting the mutual inclusion of the terms "indemnify" and "hold harmless," the court ultimately

concluded that Section 8.3 of the agreement included an intent to permit first-party indemnity claims through Section 8.3(c).  *Id.*

Here, Cenlar contends that Section 8.3(c) specifically contemplates first-party claims and that "Section 8.3(c) could only arise in connection with a first party claim." (Doc. 16, *PageID* #415).  In response, Plaintiff myCU argues that "[n]othing in Section 8.3(c) limits the indemnification to a first-party claim or even mentions first-party claims." (Doc. 20, *PageID* #438).  Plaintiff myCU further states that Section 8.3(c) "clearly requires myCU to indemnify Cenlar and hold it harmless from any third-party claims or liabilities arising from a material breach by myCU of a representation, warranty or covenant." (Doc. 20, *PageID* #438).

In support of its contention, Plaintiff myCU provides an example of how Section 8.3(c) would apply to third-party claims.  (Doc. 20, *PageID* #439).  Plaintiff myCU argues that its obligation under Section 6.1 of the Agreement is to cooperate and assist Cenlar and "execute and deliver all such papers, documents, and instruments…as may be necessary and appropriate." (Doc. 20, *PageID* #439).  Plaintiff myCU contends, hypothetically, that the failure to execute and deliver required papers would be a breach that requires Plaintiff myCU to indemnify and hold Cenlar harmless from any resulting loss or liability resulting or arising from the breach.  (Doc. 20, *PageID* #439).  This example, however, only illustrates that Section 8.3(c) "could lead to third-party claims against Cenlar" "arising directly or indirectly resulting from that breach." (Doc. 20, *PageID* #439).  The example does not demonstrate that, as a result of potential third-party claims, Section 8.3(c) excludes first-party claims.

Based on the plain language of Section 8.3(c) and the arguments set forth by Plaintiff myCU and Cenlar, it appears that Section 8.3(c) could arguably apply to both first-party and third-party claims. (Doc. 1-2, *PageID* #43). And, as similarly determined by the court in *GMFS*, interpreting Section 8.3 of the Agreement to apply only to third-party claims would result in reading Section 8.3(c) out of the Agreement. *GMFS*, 2019 WL 165711, at *5. Therefore, Plaintiff myCU's motion to dismiss Cenlar's counterclaim for indemnification is denied.

## IT IS THEREFORE RECOMMENDED THAT:

Plaintiff myCUMortgage, LLC's Partial Motion to Dismiss and for Judgment on the Pleadings (Doc. #13) be GRANTED, in part, and DENIED, in part, as set forth herein.

February 21, 2019        *s/Sharon L. Ovington*

Sharon L. Ovington
United States Magistrate Judge

# NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).