IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

myCUmortgage, LLC,  :

      Plaintiff,

    v.  :

CENLAR FSB,

      Defendant.  :

Case No. 3:18-cv-91

JUDGE WALTER H. RICE

---

DECISION AND ENTRY ADOPTING IN PART AND REJECTING IN
PART UNITED STATES MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATIONS (DOC. #22); SUSTAINING IN PART AND
OVERRULING IN PART PLAINTIFF'S OBJECTIONS THERETO (DOC.
#23); SUSTAINING IN PART AND OVERRULING IN PART PLAINTIFF
myCUmortgage's PARTIAL MOTION TO DISMISS AND FOR
JUDGMENT ON THE PLEADINGS (DOC. #13); DISMISSING WITH
PREJUDICE COUNTS THREE AND FOUR OF DEFENDANT'S
COUNTERCLAIMS

---

This matter is currently before the Court on Plaintiff's Objections, Doc. #23,

to United States Magistrate Judge Sharon L. Ovington's Report and

Recommendations, Doc. #22, recommending that the Court sustain in part and

overrule in part Plaintiff's Partial Motion to Dismiss and for Judgment on the

Pleadings, Doc. #13. Plaintiff seeks dismissal of Defendant's counterclaims for

breach of contract (Count Two), breach of implied covenant of good faith and fair

dealing (Count Three), and indemnification (Count Four).

## I.    Background and Procedural History

The relevant facts are as follows.  In 2008, Wright-Patt Financial Group entered into a mortgage subservicing agreement (the "Agreement") with Defendant, Cenlar FSB.  Doc. #2-1.  Wright-Patt's successor, Plaintiff, myCUmortgage, LLC ("myCU"), and Cenlar amended the Agreement in 2011, and again in 2015.  Docs. ##2-2, 2-3.  According to myCU, Cenlar materially breached that Agreement in several respects.  In January of 2017, myCU notified Cenlar that it would allow the Agreement to expire on May 31, 2017.

The Agreement required myCU to reimburse Cenlar for costs reasonably incurred in connection with the expiration of the Agreement, and myCU did so.  Pursuant to § 5.3 of the Agreement, if myCU allowed the Agreement to expire or terminated it without cause, myCU was also required to pay Cenlar certain Exit Fees.  When myCU refused to pay the Exit Fees, claiming that this was an unenforceable penalty, Cenlar withheld the $945,693.70 in Exit Fees from the borrower escrow funds that it was required to return to myCU.

myCU then filed suit against Cenlar, asserting claims of breach of contract and conversion, and seeking a declaratory judgment.  Doc. #2.  Cenlar filed counterclaims for declaratory judgment (Count One), breach of contract (Count Two), breach of implied covenant of good faith and fair dealing (Count Three), and indemnification (Count Four).  Doc. #9.

myCU has filed a Partial Motion to Dismiss and for Judgment on the Pleadings, Doc. #13, on Counts Two through Four.  On February 21, 2019, United

2

States Magistrate Judge Ovington issued a Report and Recommendations, Doc. #22, recommending that the Court sustain in part and overrule in part myCu's motion.

Magistrate Judge Ovington recommended that the Court dismiss Defendant Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing (Count Three). Neither party has filed Objections to this portion of the Report and Recommendations. Based on the reasoning and citations of authority set forth therein, as well as upon a thorough *de novo* review of this Court's file and the applicable law, the Court adopts that portion of said judicial filing, and dismisses with prejudice Cenlar's counterclaim for breach of implied covenant of good faith and fair dealing (Count Three).

With respect to Cenlar's counterclaims for breach of contract (Count Two) and indemnification (Count Four), Magistrate Judge Ovington recommended that the Court overrule myCU's motion. myCU has filed timely Objections to this portion of the Report and Recommendations, Doc. #23, arguing that Magistrate Judge Ovington misapplied the New Jersey law that governs these two counterclaims. Cenlar has filed a Response to myCU's Objections, Doc. #26.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 72(b)(3), the Court must make a *de novo* review of those portions of the Report and Recommendations to which proper Objections have been filed.

## III. Discussion

As noted, myCU objects to Magistrate Judge Ovington's recommendation that the Court overrule myCU's motion to dismiss the counterclaims for indemnification and breach of contract. The parties agree that, pursuant to the terms of the Agreement, these two counterclaims are governed by New Jersey law.

### A. Indemnification

Cenlar seeks indemnification for losses, including attorney fees, under § 8.3(f) of the parties' Agreement. Section 8.3 provides as follows:

> Except as otherwise stated herein, Owner/Servicer [Plaintiff myCU] shall indemnify and hold Subservicer [Cenlar] harmless against any loss, liability, forfeiture or expense, including without limitation carrying costs, investigation costs, fines, penalties and attorneys' fees and expenses, including, without limitation, the costs and expense of curing any breaches of Owner/Servicer's representations and warranties relating to the Mortgage Loans (collectively, the "Liabilities"), suffered or incurred by Subservicer arising out of, directly or indirectly resulting from or relating to:
>
> a. Owner/Servicer's willful misfeasance, bad faith, fraud, gross negligence, or reckless disregard of its obligations hereunder;
> b. any material misrepresentation made by Owner/Servicer in this Agreement;
> c. any material breach by Owner/Servicer of a representation, warranty or covenant of Owner/Servicer contained in this Agreement;
> d. errors and omissions in the processing, origination or servicing of any Mortgage Loan prior to the applicable Transfer Date;
> e. compliance by Subservicer with instructions or requirements of Owner/Servicer in connection with this Agreement; and
> f. any claim, litigation or proceeding to which Subservicer is made a party as a result of its acting as, or status as, Subservicer of a Mortgage Loan, other than any such claim, litigation or proceeding (i) which is based on a misrepresentation, breach or

> error or omission on the part of Subservicer and (ii) with respect
> to which Subservicer must indemnify Owner/Servicer pursuant
> to this Agreement.

Doc. #1-2, PageID##43-44.

Cenlar argues that, because it was made a party to this litigation as a result of its status as the Subservicer of the mortgage loans, the plain language of § 8.3(f) of the Agreement requires myCU to indemnify Cenlar for costs, including attorneys' fees, incurred in asserting the counterclaims raised in this suit.[1]

However, myCU maintains that, under New Jersey law, § 8.3 of the Agreement must be read to require indemnification only in connection with a third-party claim, *i.e.*, one in which a third party has sued Cenlar. According to myCU, New Jersey does not recognize first-party indemnification provisions like the one asserted by Cenlar, *i.e.,* a suit in which one party to the agreement sues another party to the agreement.

### 1. Report and Recommendations (Doc. #22)

As Magistrate Judge Ovington acknowledged in her Report and Recommendations, there is recent case law to support myCU's arguments. In *Travelers Indemnity Co. v. Dammann & Co., Inc.*, 594 F.3d 238 (3d Cir. 2010), the court noted that it had found no New Jersey case that had permitted first-party indemnification. However, "given the expansive meaning of 'indemnity' and New

---

[1] Cenlar notes that the exception set forth in § 8.3(f)—for claims based on Cenlar's misrepresentation, breach, error or omission—does not apply.

Jersey law's respect for the ability of parties to contract freely, . . . we cannot hold that first-party indemnification claims . . . are categorically barred as a matter of law in New Jersey absent direct authority to that effect." *Id.* at 255.

In *Travelers*, the court, interpreting the contract at issue "according to its plain language," concluded that "the only sensible reading . . . evidences a requirement that third-party liability exist for the clause to be triggered." *Id.* The court held that, although the Seller (Dammann) had agreed to "defend, indemnify and hold harmless" the Buyer (IFF) from "all claims, actions, losses, damages and expenses," IFF's "indemnification crossclaim for first-party damages fails as a matter of law." *Id.* The court explained that, "just as Dammann cannot 'defend' IFF from itself or 'hold harmless' IFF for IFF's own wrong, Dammann cannot 'indemnify' IFF for IFF's own loss." *Id.*

Subsequently, in *Investors Savings Bank v. Waldo Jersey City, LLC*, 12 A.3d 264 (N.J. Supr. Ct. App. Div. 2011), the court held, "[i]t is axiomatic . . . that an indemnification agreement must be based upon 'the indemnitee's claim to obtain recovery from the indemnitor for liability to a third party.'" *Id.* at 270 (quoting *Travelers Indem. Co. v. Dammann & Co., Inc.*, 592 F. Supp. 2d 752, 766-767 (D.N.J. 2008)). "Accordingly, the indemnity provision here has no application when presented as a shield against claims asserted against the indemnitee by the indemnitor. It is only when the indemnitee is found liable to a third party that the indemnification agreement may be triggered." *Id.* at 271. *See also Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc.*, 453 F. App'x 174, 180 (3d

Cir. 2011) (noting that recent New Jersey law foreclosed any argument "that indemnification clauses might apply to first-party disputes between parties to a contract.").

According to myCU, pursuant to *Investors Savings Bank* and *Atlantic City Associates*, first-party indemnification agreements are now categorically barred as a matter of New Jersey law. Magistrate Judge Ovington disagreed. She noted that, in *GMFS, LLC v. Cenlar FSB*, No. 18-00582, 2019 WL 165711 (M.D. La. Jan. 9, 2019), the district court pointed out that the decisions in those two cases were based "on the language of the particular indemnity provisions—not on any statutory or jurisprudential bar." *Id.* at *5. Given that neither of those provisions contained "language reflecting an intent to allow first-part indemnity," the court found these cases not "particularly instructive." *Id.* at *5 n.5.

In *GMFS*, the court interpreted the exact same contract language that is at issue in this case. As here, Cenlar was the named defendant. The *GMFS* court found that § 8.3(c) contained language reflecting an intent to permit first-party claims. That subsection requires the owner of the loans to indemnify Cenlar against loss "directly or indirectly resulting from or relating to . . . any material breach by [the owner] of a representation, warranty, or covenant of [the owner] contained in this Agreement." The court in *GMFS* questioned "how Cenlar could have liability to a third party '*directly* . . . resulting from'" the Owner's material breach. The *GMFS* court stated that it "cannot interpret § 8.3 to apply only to

third-party indemnity claims without reading § 8.3(c) out of the agreement." *Id.* at *5.

In its motion, myCU addressed the *GMFS* court's concern, providing an example of how Cenlar could be directly liable to a third party as a result of myCU's breach. Under § 6.1 of the Agreement, myCU must cooperate and assist Cenlar in carrying out its obligations, and must "execute and deliver all such papers, documents, and instruments . . . as may be necessary and appropriate." Doc. #2-1, PageID#138. myCU's failure to do so would be a material breach that could subject Cenlar to direct liability to a third party.

Magistrate Judge Ovington, however, found that this example shows only that § 8.3(c) could lead to third-party claims against Cenlar "arising directly or indirectly resulting from that breach." It "does not demonstrate that, as a result of potential third-party claims, Section 8.3(c) excludes first-party claims." Doc. #22, PageID#473. Relying on *GMFS*, she found that "Section 8.3(c) could arguably apply to both first-party and third-party claims" and "interpreting Section 8.3 of the Agreement to apply only to third-party claims would result in reading Section 8.3(c) out of the Agreement." *Id.* at PageID#474. For this reason, Magistrate Judge Ovington recommended that the Court overrule myCU's motion to dismiss the indemnification counterclaim.

### 2. myCU's Objections and Cenlar's Response (Docs. ##23, 26)

myCU has filed timely Objections to this portion of the Report and Recommendations. Doc. #23. It argues that *Investors Savings Bank* governs the

outcome of this case and that first-party indemnification provisions are categorically prohibited under New Jersey law. myCU maintains that Magistrate Judge Ovington's reliance on *GMFS*, an unpublished Louisiana district court decision interpreting New Jersey law, is misplaced. myCU urges this Court to instead defer to the decision of the Superior Court of New Jersey in *Investors Savings Bank*, and the decisions of federal courts within the Third Circuit interpreting New Jersey law, *i.e.*, *Travelers Indemnity* and *Atlantic City Associates*, to avoid creating a split of authority over this issue.

myCU further argues that, because of the "strong public policy" disfavoring the shifting of attorneys' fees, any contractual provision concerning indemnification for attorneys' fees must be strictly construed against the indemnitee. *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 439-40 (N.J. 2009). Finally, myCU objects to Magistrate Judge Ovington's finding that construing § 8.3 of the Agreement to apply only to third-party claims would read § 8.3(c) out of the Agreement. As previously noted, myCU has explained how direct liability might arise under § 8.3(c), thereby removing the only impediment cited by the *GMFS* court.

In its Response to myCU's Objections, Cenlar argues that New Jersey law does not categorically prohibit first-party indemnification provisions, and that the Agreement here clearly contemplates first-party claims.

9

### 3.    Discussion

As Cenlar points out, the indemnification provision in the Agreement does explicitly authorize indemnification for attorneys' fees and costs. The question, however, is whether they are available to Cenlar in the context of this particular dispute. Having considered the arguments of the parties, the Court sustains myCU's Objections and, to the extent that Magistrate Judge Ovington recommends overruling myCU's motion to dismiss Count IV of Cenlar's counterclaims, the Court rejects the Report and Recommendations.

In this case, the Court need not decide whether New Jersey law categorically bars first-party indemnification agreements. Statements made in *Investors Savings Bank*, *Atlantic City Associates* and, to a certain extent, *Travelers Indemnity*, certainly appear to support a categorical bar on such claims. Nevertheless, as the court noted in *Travelers Indemnity*, such a "sweeping rule" would appear to run afoul of New Jersey's respect for "the ability of parties to contract freely." 594 F.3d at 255. The court must instead look to the language of the contract at issue. *Id.* The court must read the indemnity provision "as a whole in a fair and common sense manner," interpret the provision "according to its plain language," and "avoid ignoring certain words or reading the contract in such a way as to make any words 'meaningless.'" *Id.* (quotations omitted).

Cenlar stakes its claim for attorney fees and costs on § 8.3(f) of its Agreement with myCu. Regardless of whether New Jersey categorically bars first-party indemnification claims, that subsection of the Agreement does not reflect an

10

intent to allow Cenlar to recover its attorneys' fees and costs in defending itself in this lawsuit. In Section 8.3(f) of the Agreement, myCU expressly agreed to "indemnify and hold [Cenlar] harmless against any loss, liability forfeiture or expense," including attorneys' fees, incurred by Cenlar "arising out of, directly or indirectly resulting from or relating to: . . . (f) any claim, litigation or proceeding to which [Cenlar] is made a party *as a result of its acting as, or status as, Subservicer of a Mortgage Loan.*" Doc. #2-1, PageID##141-42 (emphasis added).

The italicized language strongly suggests that myCU is obligated to indemnify only against liability and expenses arising from *individual* claims asserted against Cenlar by a *third party* whose loan Cenlar is servicing. Here, Cenlar was made a party to this litigation, not because it was acting as the Subservicer of any *particular* loan, but because it allegedly breached contractual obligations imposed on it as the designated Subservicer of *all* mortgage loans covered by the Agreement. The plain language of § 8.3(f) cannot logically be interpreted to require myCU to indemnify Cenlar for expenses incurred in defending itself in this lawsuit. Moreover, to the extent that this language is ambiguous, it must be strictly construed against a finding that myCU must indemnify Cenlar for attorney fees incurred in the context of this lawsuit. *Litton Indus.*, 982 A.2d at 440 (noting that courts strictly construe fee-shifting provision in contracts "in light of the general policy disfavoring the award of attorneys' fees.") (quotation omitted).

A brief discussion of the *GMFS* decision on which Magistrate Judge Ovington relied is in order. That decision is directly on point in that it interprets the

11

identical contract language at issue in this case. Notably, however, the decision contains no discussion of § 8.3(f), the subsection on which Cenlar relies.

To the extent that the *GMFS* court found that § 8.3 cannot be interpreted to apply only to third-party indemnity claims without reading § 8.3(c) out of the agreement, the Court respectfully disagrees. As previously noted, myCU has explained how Cenlar might be directly liable to a third party as a result of myCU's breach.

Moreover, *GMFS* does not necessarily push Cenlar across the finish line in its quest for indemnification. The court did not hold that Cenlar could bring a first-party indemnification claim. Although it found that § 8.3(c) "contains language reflecting an intent to permit first-party claims," it also found that, as in *Travelers Indemnity*, the "hold harmless" language appeared to limit indemnification to third-party claims. *GMFS*, 2019 WL 165711, at *5. Given that the parties had not "briefed this conflict or suggested how the Court should resolve it," the court declined, at that juncture, to decide "whether Cenlar may bring a first-party indemnity claim against GMFS." *Id.*

For the reasons stated above, the Court finds that § 8.3(f) of the Agreement does not permit Cenlar to recover its attorneys' fees and expenses incurred in this litigation. Cenlar has therefore failed to state a claim upon which relief may be granted. Accordingly, the Court sustains myCU's Objections to the Report and Recommendations, and dismisses Cenlar's counterclaim for indemnification (Count Four) with prejudice.

12

## B.    Breach of Contract

In its Second Counterclaim, Cenlar alleges that the Agreement unequivocally sets forth Cenlar's right to receive Exit Fees regardless of whether the Agreement is terminated for cause.  Cenlar further alleges that myCU anticipatorily repudiated the Agreement by refusing to pay the Exit Fees, and later filed suit seeking a declaration that they are unenforceable.  Cenlar maintains that this constitutes a material breach of the Agreement.  As a result of the anticipatory repudiation, Cenlar has been unable to receive the benefits of the Agreement and has suffered damages.

myCU argues that this counterclaim must be dismissed because Cenlar suffered no damages.  Cenlar, in fact, admits that it retained all of the Exit Fees to which it claims to be entitled.  In her Report and Recommendations, however, Magistrate Judge Ovington found that Cenlar had stated a plausible claim for damages in that Cenlar alleges that it has incurred costs and attorney's fees in response to myCU's efforts to avoid paying the Exit Fees.

myCu's Objection to this finding is intertwined with its previous Objection. It argues that Cenlar's costs and attorney's fees can be recovered, if at all, only pursuant to the indemnification provision in the Agreement, which fails as a matter of law because, under New Jersey law, it does not apply to first-party claims. Accordingly, myCU argues that Cenlar has failed to allege any actual, recoverable damages.

myCU, however, fails to address Magistrate Judge Ovington's finding that, under New Jersey law, a lack of actual damages is not fatal to a breach of contract claim. As she noted, "[t]he general rule is that whenever there is a breach of contract . . . or an invasion of a legal right, the law ordinarily infers that damage ensued, and, in the absence of actual damages, the law vindicates the right by awarding nominal damages." *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 477 A.2d 1224, 1228 (N.J. 1984).

Accordingly, even though Cenlar may not be able to recover attorneys' fees and costs for the alleged breach of contract, it may be able to recover nominal damages. To this limited extent, the Court overrules myCU's Objection to the Report and Recommendations with respect to the breach of contract claim (Count Two). Count Two is not subject to dismissal at this time.

## IV. Conclusion

For the reasons set forth above, the Court ADOPTS IN PART and REJECTS IN PART Magistrate Judge Ovington's Report and Recommendations, Doc. #22, and SUSTAINS IN PART and REJECTS IN PART Plaintiff's Objections thereto, Doc. #23. Plaintiff's Partial Motion to Dismiss and for Judgment on the Pleadings, Doc. #13, is SUSTAINED IN PART AND OVERRULED IN PART. Although Cenlar may proceed on Count Two of its Counterclaims (breach of contract), Counts Three (breach of implied covenant of good faith and fair dealing) and Four (indemnification) are DISMISSED WITH PREJUDICE.

14

Date: March 28, 2019

WALTER H. RICE
UNITED STATES DISTRICT JUDGE